# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

| | |
|---|---|
| IN RE:    CANTRELL DRUG COMPANY | Case No. 4:17-bk-16012 |
| Debtor-in-Possession | Chapter 11 |

**CANTRELL DRUG COMPANY**      **PLAINTIFF**

VS.      AP NO. _____

**UNITED STATES OF AMERICA**

**FOOD AND DRUG ADMINISTRATION**
10903 New Hampshire Avenue
Silver Springs, MD 20993

**SCOTT GOTTLIEB, M.D.**
In His Official Capacity as
Commissioner of Food and Drugs,
Food and Drug Administration
10903 New Hampshire Avenue
Silver Springs, MD 20993

And

**THOMAS E. PRICE, M.D.**
Secretary of Health and Human Services
200 Independence Avenue SW      **DEFENDANTS**
Washington, DC 20201

## EMERGENCY MOTION TO EXTEND AUTOMATIC STAY AND FOR PRELIMINARY INJUNCTION

Comes now the Plaintiff / Debtor-in-Possession Cantrell Drug Company ("Debtor"), by and through counsel, and for its Emergency Motion to Extend Automatic Stay and for Preliminary Injunction (the "Motion") states as follow:

1. The Debtor brings this Motion pursuant to Rule 7065 of the Federal Rules of Civil Procedure and 11 U.S.C. § 105(a).

## PARTIES

1. The Debtor is an Arkansas corporation. Debtor's principal place of business is Little Rock, Arkansas.

2. Defendant United States of America acting through its agency, the Food and Drug Administration ("FDA") is a government subdivision or agency of the United States of America. The FDA is listed on the Debtor's schedules and, on information and belief, has actual knowledge of the Debtor's November 7, 2017 petition filing.

## JURISDICTION AND VENUE

3. This is a core proceeding over which the Court has jurisdiction under 28 U.S.C. §§ 157(b)(2)(A), (G), (M) and/or (O), 28 U.S.C. § 1334. This is an adversary proceeding pursuant to Bankruptcy Rule 7001.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(e).

## FACTUAL BACKGROUND

5. Debtor is an outsource human drug compounder that is registered with the Food and Drug Administration ("FDA" or "the Agency") under Section 503B of the federal Food, Drug and Cosmetic Act 21 U.S.C. § 301 *et seq.*, ("FDCA"). Debtor does business throughout the United States was among the first compounding pharmacies in the nation to register with the FDA under § 503B. Debtor's customers include hospitals and surgical centers for whom Debtor provides drug compounding services. One of the critical services that Debtor provides is to produce drugs that are listed on the FDA's drug shortage list due to lack of supply available from drug manufacturers.

6. Pursuant to its regulatory authority, the FDA conducted an inspection of Debtor's outsourcing facility at 7321 Cantrell Road, Little Rock, Arkansas that was completed on June 29, 2017. At the conclusion of the inspection the FDA issued a FDA Form 483 to Debtor. A 483 is a

report issued to management at the conclusion of an inspection when an investigator has observed any conditions that in their judgment may constitute violations of the Food Drug and Cosmetic Act ("FDCA") and related acts.

7. From and since June 29, 2017, representatives of Debtor have been in constant communication with FDA representatives and officials regarding concerns the FDA raised by Form 483 and taken a number of steps to remediate any alleged deficiencies in its manufacturing processes, including, recalling and cessation of shipment of products on two separate occasions and retaining third party consultants to advise and assist the Debtor to insure compliance with good manufacturing processes. These communications and reports are voluminous and extensive, but demonstrate the Debtor has complied with all requests of the FDA and taken extraordinary steps to insure the safety of its products and that the Debtor regularly advised the FDA of the remediation measures it was taking and the circumstances under which it released product into the marketplace. The Debtor specifically advised the FDA that the Debtor believed it was in compliance with the FDCA and intended to ship and release products into the marketplace. At no time did FDA officials or representatives advise the Debtor that the Debtor was in violation of the FDCA or that it release of products at such time was prohibited by law. Debtor has been actively and continuously releasing product into the marketplace as part of its on-going reorganization efforts. The Debtor has invited FDA officials to come to its facilities to review its methods and processes, but it refused to do in an e-mail dated October 12, 2017. The following documents are attached hereto for the Court's consideration:

    a. **Exhibit A-1** - Form 483 dated June 29, 2017.

    b. **Exhibit A-2** – Debtor's Response to 483 dated July 19, 2017.

    c. **Exhibit A-3** – Letter of Pro Pharma Group dated August 18, 2017.

  d.  **Exhibit A-4** – Site Visit Letter of Kymanox dated September 21, 2017.

  f.  **Exhibit A-5** – Executive Summary of Integrated Project Services, LLC, dated October 5, 2017.

  g.  **Exhibit A-6** – Executive Summary of Debtor based on review with Escalate Sciences dated on or about September 18, 2017.

  h.  **Exhibit A-7** – Letter from Debtor to FDA dated November 20, 2017 (without attachments).

  i.  **Exhibit A-8** – Competency Evaluation letter from Richard Motruck, Director of Technical Operations for Kymanox, dated December 31, 2017.

  j.  **Exhibit A-9** – E-mail from FDA to Debtor dated October 12, 2017.

  k.  **Exhibit A-10** – Timeline Summary of Major Events from July 1, 2017 to January 12, 2018.

8. The Debtor's voluntary recall and periodic cessation of product shipment is the primary reason for the Debtor to file for Chapter 11 reorganization.

9. On December 27, 2017, despite regular communications with FDA, including providing all of the reports issued by third parties noted above, without any belief of any additional concerns, the Debtor, received a letter from the US Department of Justice indicating the Debtor was out of compliance with the FDCA (the "DOJ Letter") and that it intended to seek an injunction in federal court to prohibit the Debtor from releasing product unless the Debtor and its principal, Dell McCarley signed a Consent Decree of Permanent Injunction (the "DOJ Proposed Consent Decree") that, among other issues, involves an admission that the Debtor was presently in violation of the FDCA. A copy of this letter and the DOJ Proposed Consent Decree are attached hereto as **Exhibits B-1** and **B-2**. The Debtor and the DOJ have negotiated since early January 2018 but have

been unable to reach an agreement. Despite the Debtor's request, the FDA has refused to come to Debtor's facilities to review methods and processes and refused a conference call with the Debtor. The four main areas of disagreement involve the Debtor's admission of liability, destruction of certain product, cessation of operations, and imposition of fines.

10. The Debtor expressly denies that it is violation of the FDCA.

11. On information and belief, the information and evidence on which the DOJ Letter and DOJ Proposed Consent Decree is outdated, inaccurate, and does not give due consideration to the third party reports.

12. The Debtor asserts that it is currently in compliance with all of the conditions set forth in Paragraphs 8 of the DOJ Proposed Consent Decree and is actively implementing the procedures identified in Paragraph 10 of the DOJ Proposed Consent Decree. In particular, the Debtor internally conducts detailed testing reports on each batch of manufactured product, which includes sterility testing, before releasing same into the market place (a "Test Report"). An example copy of a Test Report is attached hereto as **Exhibit C-1**. In addition, the Debtor's current third party consultant, Kymanox, issues a release memo regarding such third party's evaluation of the efficacy and sterility of each manufactured batch before it releases product in the market place (a "Release Memo"). An example copy of a Release Memo is attached hereto as **Exhibit C-2**. As a result of the third party reports, noted above, and the active use of the Test Reports and the Release Memos, the **Debtor's present and on-going actions do not pose a threat to public safety**.

13. As part of a good faith effort to resolve outstanding regulatory issues with the FDA, the Debtor has agreed to the terms of a Permanent Consent Decree in a form substantially similar to attached **Exhibit D-1** (the "Debtor's Proposed Consent Decree"). A complete marked version

of the Debtor's Proposed Consent Decree as compared to the DOJ's Proposed Consent Decree, showing proposed additions, deletions, and modifications, is attached hereto as **Exhibit D-2**. To date, the DOJ and FDA refuse to accept the terms of the Debtor's Proposed Consent Decree. Should the Debtor be required to accept the terms of the DOJ's Proposed Consent Decree, which the FDA seeks from a federal United States District Court, **the Debtor will be required to cease operations without any assurances of prompt reactions from the FDA**.

14. On March 1, 2018, the DOJ and FDA filed a complaint for injunction in the United States District Court, Eastern District of Arkansas, an unfiled copy of which is attached hereto as **Exhibit E**. The threatened actions of the DOJ and the FDA will cause immediate and irreparable harm to the Debtor and its estate and will likely destroy the Debtor's on-going business operations and require the Debtor to shut down and abandon its reorganization efforts through dismissal or conversion to Chapter 7. Such action would impact not only the Debtor, but the Debtor's employees, customers, and its creditors. As part of the DOJ's Proposed Consent Decree, the FDA requests that the Debtor pay all costs of FDA supervisory work before a full hearing on the merits. This is grossly overreaching and may violate the automatic stay and the Bankruptcy Code. Other Courts, including the Third Circuit Court of Appeals and the United States District Court for the Central District of California have found certain of FDA's unilateral requests for injunctive relief overbroad, to-wit:

> From this discussion of part V of the Preliminary Injunction and part III of the TRO22 it is equally apparent that the order granting the FDA supervisory power over the conduct of defendants' business was wholly unwarranted. The order forbids defendants from distributing or holding for sale any article of food or drug without the FDA approval, requires the FDA to sequester defendants' inventory and their entire stock of raw materials and to destroy all items which it does not "approve". Further, the decree orders defendants to abide by the decisions of the FDA representative, to compensate the government for the cost of this supervision, and generally enjoins defendants from selling or *1182 disposing of any article of food or drug in violation of the Act or the laws of any State or

6

> Territory. This far-reaching order might appropriately be included in a permanent injunction issued after a full evidentiary hearing disclosed a history of repetitive, flagrant violations, suggesting a real danger of recurrent evasions of a more carefully drawn order.

*United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181–82 (3d Cir. 1976)).

The DOJ's Proposed Consent Decree also includes FDA's unfettered discretion to take a broad range of actions with no accountability whatsoever, and to make Debtor pay for FDA's efforts in doing so:

> Defendants oppose the government's proposed permanent injunction on a number of grounds. The substance of Defendants' arguments is that the proposed injunction is unneeded and overly broad. According to Defendants, the proposed injunction is unnecessary because Defendants ceased distributing raw milk in interstate commerce in 2007. Defendants also criticize the scope of the proposed injunction, arguing that it "give[s] the FDA unlimited, undefined discretion to order [Organic Pastures] to do, or stop doing, anything the FDA determines," which threatens Organic Pastures' financial viability."

*United States v. Organic Pastures Dairy Co.*, 708 F. Supp. 2d 1005, 1013 (E.D. Cal. 2010). Additionally, given that there is no evidence that any of Debtor's products are adulterated, contaminated, or that they are causing harm to the public, the relief sought by FDA is not narrowly tailored:

> In this context, the true defect in the government's proposed injunction comes to light: the injunction mirrors those issued in *Odessa Union* and *Blue Ribbon Smoked Fish*, ***however, there is no evidence that Defendants' products are adulterated, contaminated, or that they are causing harm to the public***. This is not a 21 U.S.C. § 342 case. Instead, the government's evidence is that Defendants mislabeled, misbranded, and shipped raw milk and raw milk products across state lines in violation of the FDCA. Under well-established precedent, injunctive relief must be narrowly-tailored to reflect that evidence and prevent specific harms threatened. On these facts, the suggestion that government should have the access and control normally associated with contamination/adulteration cases is unpersuasive.

*United States v. Organic Pastures Dairy Co.*, 708 F. Supp. 2d 1005, 1016 (E.D. Cal. 2010).

7

RELIEF REQUESTED

15. The Debtor requests this Court, pursuant to its inherent authority of Section 105 of the Bankruptcy Code **to preserve the status quo and enjoin the Defendants from taking any adverse action against the Debtor or its principals for at least forty-five days** to permit the Debtor and the Defendants to negotiate a resolution of the issues raised by the DOJ Letter or unless or until the Defendants are granted relief from the automatic stay.

16. This request preserves the status quo as the Debtor has been shipping products with the full knowledge of the FDA for more than thirty days before Debtor's receipt of the DOJ Letter.

17. Section 362 of the Bankruptcy Code operates to stay "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

18. The automatic stay does not prohibit certain regulatory enforcement actions by federal agencies. *See* 11 USC § 362(b)(4) ("The filing of a petition under section 301, 302, or 303 of this title [11 USCS § 301, 302, or 303] . . . does not operate as a stay-- . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."). *See also United States v. Commonwealth Cos., Inc. (In re Commonwealth Cos., Inc.)*, 913 F.2d 518 (8th Cir. 1990).

19. Notwithstanding the generally non-applicability of the automatic stay to a governmental unit's exercise of police or regulatory authority, Bankruptcy Courts are empowered,

8

pursuant to the authority of 11 USC § 105 to issue an order to enjoin a regulatory body from exercising its police or regulatory authority if the action interferes with the bankruptcy estate and the facts require a necessity. *In re MJL Cattle Co, LLC*, 2010 Bankr. Lexis 3881 (Bankr. W.D. Mo. 2010) (Dow, J.) ("Debtors are not left without recourse if the [regulatory body] were to take action which negatively impacts Debtors' Bankruptcy estate. 'The Bankruptcy Court has 'ample other powers' to stay such an action . . . including the discretionary power under 11 U.S.C. § 105(a) to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.' Discretionary stays under § 105(a) will be granted only if a party shows a necessity for a stay. *Id*. In other words, even though the Court finds that § 362(b)(4) applies to the [regulatory body's] regulatory power to investigate the complaints it received regarding Leonard, the Court may use its powers under § 105(a) to enjoin the [regulatory body] from interfering with Debtors' property if properly requested to do so and if the facts so require.") (*citing Commonwealth*, 917 F.2d at 527).

20.     Discretionary stays are granted under the usual rules governing the issuance of injunctions. *See Commonwealth*, 917 F.2d at 527.

21.     The general rule for granting injunctions in the Eighth Circuit are as follows:

   a.     Probability of Success on the Merits:

   b.     Threat of Irreparable Harm to the Movant Absent an Injunction;

   c.     The Balance between the Irreparable Harm and the Injury that the Injunction Would Inflict on the Interested Parties; and

   d.     The Public Interest.

*See Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). *See also Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017); Fed. R. Bank. P. 7065 and Fed. R Civ. P. 65(b)(1). A

Bankruptcy Court must weigh competing interests and must "justify the stay by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *In re Riverbend Leasing, LLC*, 458 B.R. 520, 526 (Bankr. S.D. Iowa 2011). Whether such relief is appropriate must be determined on a case-by-case basis. *Id.*

### Irreparable Harm

22. Should the Defendants pursue the claim threatened in the DOJ Letter and seek the Proposed Consent Decree, immediate and irreparable harm will occur to the bankruptcy estate. Specifically, the Debtor's operations will be shut down unless the Debtor and its principal agree to admit noncompliance with the FDCA based on outdated information and without acknowledgement of the transparency and proactive measures the Debtor has taken in respect to the FDA's concerns. A shutdown will violate the terms and conditions of the Debtor's cash collateral order and DIP Financing Order and will likely cause customers to look for other suppliers and employees to find other jobs. The Debtor would then be looking at a liquidation value that will decimate the going concern value of the Debtor and likely prevent creditors from receiving payment.

### Balance of Interests

23. Granting an injunction will not harm other interested parties; rather, it will allow the Debtor to continue operations and generate the necessary cash flow to fund the Debtor's plan and pay its creditors. Not granting an injunction will cause harm to all creditors of the bankruptcy estate or be a threat to public safety, as Debtor has taken appropriate actions to insure the quality of its manufactured products. By contrast, as noted above, based on the third party reports, the Test Reports, and batch Release Memos, and the FDA's refusal to inspect the Debtor's current operations despite the Debtor's request for the FDA to do so, the Debtor's continued improvements

to its processes since August 2017 and the FDA's actual knowledge the Debtor has been shipping products since November 2017 without incident or evidence of an adulterated, contaminated, or unsterile product entering the marketplace, it is clear that the Debtor's present and on-going operations do not pose a public safety concern.

## Success on the Merits

24. "Likelihood of success on the merits requires that the movant find support for its position in governing law." *Moffitt v. America's Servicing Co. (In re Moffitt)*, 390 B.R. 368, 386 (Bankr. E.D. Ark. 2008). As stated in the AP Complaint, pursuant to the court's expansive equitable powers under 11 U.S.C. § 105 to ensure orderly reorganization of the bankruptcy estate, the Court may extend the automatic stay where the Debtor has shown the possibility of irreparable harm to the bankruptcy estate if the stay is not extended, or that failure to extend the stay would adversely affect the Debtor's chances for successful reorganization. 11 U.S.C. § 105(a); *see e.g. C.H. Robinson Co. v. Paris & Sons, Inc.*, 180 F. Supp. 2d 1002, 1018 (N.D. Iowa 2001). A court may use its power under 11 U.S.C. § 105 to extend the automatic stay of § 362 when an action otherwise exempted from the stay may "interfere with the rehabilitative process" or which will have an "adverse impact on the debtor's ability to formulate a chapter 11 plan," such as when the debtor's reorganization is dependent on the financial contributions of individuals. *Veeco Inv. Co., L.P. v. Mercantile Nat'l Bank, N.A. (In re Veeco Investment Co., L.P.)*, 157 B.R. 452, 456-57 (Bankr. E.D. Mo. 1993). As described in the AP Complaint, the FDA's pursuit of the DOJ Proposed Consent Decree required a shut-down of operations, which will interfere with the debtor's rehabilitative process and ability to form and fund a chapter 11 plan. As such, the Debtor expects to succeed on the merits of its request for extension of the stay. By contrast, because of the third party reports, the current use of Test Reports, the Release Memos, the FDA's

unwillingness to inspect the facility, and the Debtor's willingness to enter into the Debtor's Proposed Consent Decree, neither the DOJ nor the FDA can meet its burden of obtaining a TRO or other injunction to justify shutting down the Debtor's operations.

## Public Interest

25. As noted above, should this Court grant an injunction, the public safety, the only non-monetary public policy the FDA or DOJ seeks to enforce against the Debtor, will not be affected, as adequate safeguards are presently in place and the FDA's conduct demonstrates that it does not think the Debtor's operations are an immediate threat to public health. By contrast, the public policy of the Bankruptcy Code, namely to allow businesses to reorganize, protect the interests of creditors, and preserve jobs, will be promoted by granting the injunction and will preserve the status quo and allow the Debtor to continue operations and generate the necessary cash flow to fund the Debtor's plan and pay its creditors. Not granting an injunction will harm all creditors of the bankruptcy estate. Such action would also affect the supply of critical drug shortages (e.g. Morphine Sulfate Injection, indicated to treat severe pain) to hospitals across the country that are being compounded by the Debtor. This is in direct conflict with Congress' intent to provide a sub-tier of non-FDA approved pharmaceutical production (i.e. non-patient specific compounding) to fill the gaps when FDA approved pharmaceutical are not available to the patient.

26. Based on the foregoing, the Debtor respectfully requests the Court extend the automatic stay and immediately implement a Temporary Restraining Order and/or Preliminary Injunction barring Defendants from pursuing its threatened actions against the Debtor and the individuals named in the DOJ Proposed Consent Decree for 45 days to allow the parties to attempt to resolve issues outside of litigation.

27. Due to the extent of the continued actions of the FDA, an emergency exists which, if not granted, will cause irreparable harm to the estate and all creditors of the estate. The purposes of the automatic stay and the Debtor's petition for relief will continue to be frustrated unless the is enjoined from continuing its actions for at least 45 days. The Debtor requests a hearing be set on this Motion immediately.

WHEREFORE, the Debtor respectfully requests this Court grant its Emergency Motion to Extend the Automatic Stay, and for Preliminary Injunction, set an immediate hearing on this Motion, and for all other good and proper relief to which it may be entitled.

> Respectfully submitted,
>
> KEECH LAW FIRM, PA
> 2011 South Broadway
> Little Rock, AR 72206
> 501.221.3200 (telephone)
> 501.221.3201 (fax)
>
> By: /s/ Kevin P. Keech
> Kevin P. Keech (Ark. Bar No. 98147)
> kkeech@keechlawfirm.com
>
> *Attorneys for Debtor-In-Possession*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed via the Court's ECF system on March 1, 2018 which will send notification of such filing to all registered parties and to the following parties by the following mediums and methods:

United States Attorney for the Eastern District of Arkansas, Cody Hiland, 425 West Capitol, Avenue, Suite 500, Little Rock, Arkansas 72201 via US Mail.

Office of the United States Attorney General, Jefferson Sessions, 950 Pennsylvania Avenue, Washington, DC 20530 via US Mail

SCOTT GOTTLIEB, M.D., In His Official Capacity as Commissioner of Food and Drugs, Food and Drug Administration, 10903 New Hampshire Avenue, Silver Springs, MD 20993 via US Mail

THOMAS E. PRICE, M.D.,Secretary of Health and Human Services, 200 Independence Avenue SW, Washington, DC 20201 via US Mail

John Diehl, Acting Director, Compliance Branch, Office of Pharmaceutical Quality Opertions, Division II, Food and Drug Administration, Office of Regulatory Affairs via E-Mail– john.diehl@fda.hhs.gov

Raquel Toledo, Trial Attorney, Consumer Protection Branch, Department of Justice, Civil Division via E-mail – Raquel.toledo@usdoj.gov

Shannon Smith, Assistant United States Attorney via E-Mail – shannon.smith@usdoj.gov

                                                       _/s/ Kevin P. Keech_